IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-694

 No. COA20-610

 Filed 21 December 2021

 Cumberland County, No. 16 CRS 2688-94, 2697-2701

 STATE OF NORTH CAROLINA

 v.

 ROBIN APPLEWHITE

 Appeal by defendant from judgments entered 5 March 2019 by Judge Thomas

 H. Lock in Cumberland County Superior Court. Heard in the Court of Appeals 3

 November 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General A. Mercedes
 Restucha-Klem, for the State.

 Michael E. Casterline for defendant-appellant.

 TYSON, Judge.

¶1 Robin Applewhite (“Defendant”) appeals from judgments entered upon a jury’s

 verdicts finding him guilty of twelve counts of human trafficking, eleven counts of

 promoting prostitution and four counts of conspiracy to promote prostitution and

 attaining habitual felon status. We find no error.

 I. Background

¶2 Defendant met several adult women, A.C., H.M., A.B., M.F., J.O. and E.C.
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 between December 2012 and March 2015 (parties agree to permit use of pseudonyms

 to protect the identity of the victims). Defendant capitalized on the women’s

 addictions to heroin and dire economic circumstances to manipulate them to engage

 in prostitution arranged via online advertisements set up by Defendant and his wife,

 Samantha Rivard (“Rivard”). The women gave money paid and received from

 engaging in sexual acts to Defendant in exchange for heroin, food, transportation,

 and a place to live.

¶3 Defendant withheld drugs, food, sleep and means of communication from the

 women with family and friends. He locked the women in a hotel room or in the

 basement of his own home on occasions.

¶4 Defendant drove the women across North Carolina, from Fayetteville to

 Charlotte, Raleigh, Wilmington, and across state lines to Virginia, South Carolina,

 and Florida, to engage in sexual acts in exchange for money. Rivard posted the

 women’s images on Backpage, an online classified advertising website, to solicit and

 schedule customers. A.C.’s advertisement was posted at least 197 times in three

 cities. M.F. was posted 219 times in at least three cities.

¶5 In March 2015, J.O. alleged she was forced to perform sexual acts for money

 against her will, while she was restrained in a basement and after being transported

 to Charlotte. On 18 March 2015, Defendant was arrested and charged with second-

 degree kidnapping, human trafficking and sexual servitude. On 2 April 2015, police
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 searched the home located on Cedarwood Avenue in Spring Lake where J.O. alleged

 she had been held. Rivard was also arrested.

¶6 Defendant was indicted on 14 November 2016 for multiple charges of human

 trafficking, promoting prostitution, and conspiring to promote prostitution against

 six alleged victims. On 2 January 2018, corresponding habitual felon indictments

 were issued in each of the previously indicted files. Defendant was also indicted on

 the following additional charges against alleged victim J.O. for second degree

 kidnapping and attaining habitual felon status.

 A. Competency Hearing

¶7 Defendant was ordered to undergo an examination at Central Regional

 Hospital to determine his capacity to proceed to trial. Dr. Charles Vance, a forensic

 psychiatrist, conducted an initial forensic interview on 8 September 2016, with a final

 evaluation dated 10 November 2016. He found Defendant was mentally competent

 to proceed to trial. On 18 January 2017, Superior Court Judge James Ammons

 conducted a competency hearing. The court heard Dr. Vance’s testimony concerning

 his evaluation of Defendant and his opinion concluding Defendant understood the

 charges against him and was competent to stand trial. Defendant was found

 competent to stand trial.

¶8 On 29 January 2019, another hearing on Defendant’s capacity was held by

 Superior Court Judge Thomas Locke. Defendant was represented by counsel. On its
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

own motion, the court received into evidence a report submitted from Dr. Vance dated

October 2016. The court engaged in lengthy discussions with Defendant regarding

his medical condition, capacity to proceed, and his stated desire to represent himself

throughout the hearing. The court entered its findings and conclusion:

 THE COURT: As seen by Dr. Charles Vance at Central
 Regional Hospital during the period of time between
 September 14, 2016 and October 5, 2016. That Dr. Vance
 conducted an extensive examination of the defendant and
 prepared a nine-page report, that Dr. Vance concluded that
 the defendant is, quote, quite cynical and mistrustful,
 closed quote, in that he suffers from an unspecified
 personality disorder, cocaine use disorder, opiate use
 disorder, illness anxiety disorder and has some history of
 malingering but that Dr. Vance found that Mr.
 Applewhite’s displayed behaviors do not rise to the level of
 negating his fundamental capacity to proceed to trial. Dr.
 Vance rather opined that Mr. Applewhite demonstrated a
 good understanding of the nature and object of the
 proceedings against him and that he likewise
 comprehended his position in reference to these proceedings.
 In fact, Mr. Applewhite does maintain the ability to work
 with his attorney in a rational and reasonable manner in
 the preparation of his defense if he so chooses. Dr. Vance
 further found that in his opinion Mr. Applewhite was
 competent. Based upon this report, based upon the
 representations of [counsel] . . . he has not questioned the
 defendant’s mental capacity, based upon the Court’s
 observations of the defendant and the state moreover not
 questioning the defendant’s capacity, the Court does find
 and concludes as a matter of law that the defendant is able
 to understand the nature and object of the proceedings
 against him. He is able to comprehend his own situation in
 reference to the proceedings and he is able to assist in the
 defense in a rational or reasonable manner in that he does
 possess the capacity to proceed. (emphasis supplied).
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 B. Trial

¶9 Defendant was represented by several attorneys prior to waiving his right to

 counsel and choosing to proceed pro se to trial.

¶ 10 On the morning of trial on 18 February 2019, and numerous times throughout

 the pendency of the case, Defendant demanded to represent himself. Defendant

 waived his right to counsel. The court appointed stand-by counsel.

¶ 11 Defendant filed a motion to continue the trial, stating he did not believe he was

 mentally competent due to a medical condition which caused an increase in ammonia

 in his blood to a point where he can become delusional. The trial court considered

 and determined Defendant was taking his medication and was not actively

 experiencing delusions. Based on its own observations and interactions with

 Defendant, the court denied Defendant’s motion to continue the trial. The court

 periodically confirmed Defendant received his medication throughout the trial.

¶ 12 During trial, A.C. testified numerous other women had similar working

 arrangements with Defendant and Rivard. The couple posted classified ads on

 Backpage and rented hotel rooms in various cities, including Fayetteville,

 Greensboro, Raleigh, Charlotte, Wilmington, Jacksonville, Roanoke, Myrtle Beach

 and Orlando. A.C. testified she relied upon Defendant to supply the heroin she

 needed to avoid going into withdrawal and for her meals. A.C. testified Defendant

 might dispense food and drugs generously, or, if he was upset, would withhold them.
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

¶ 13 H.M. and A.B. testified to having similar experiences with Defendant and

 Rivard, as A.C. had described. They also testified regarding M.F., her addiction to

 heroin, and being held by Defendant for acts of sexual servitude. M.F. died before

 Defendant’s trial began.

¶ 14 The jury returned unanimous verdicts and found Defendant guilty of five

 counts of human trafficking A.C. over a period of two months; two counts of human

 trafficking H.M over a period of two months; two counts of human trafficking M.F.

 over a period of one month; and three counts of trafficking A.B. over a period of fifteen

 months. The jury found Defendant not guilty of two counts of human trafficking E.C.

 and not guilty of three counts of human trafficking J.O.

¶ 15 The State calculated fourteen prior record points and sentenced Defendant as

 a prior record level five. The fourteen prior record points were based upon

 Defendant’s four previous felony convictions and two previous Class 1 misdemeanor

 convictions, which were separate from the three prior felony convictions used to

 establish Defendant’s habitual felon status.

¶ 16 Defendant was ordered to register as a sex offender and received an active total

 sentence of 2,880 to 3,744 months. Defendant appeals.

 II. Jurisdiction

¶ 17 This appeal is properly before this Court pursuant to N.C. Gen. Stat. §§ 7A-

 27(b)(1) and 15A-1444(a) (2019).
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 III. Issues

¶ 18 Defendant raises four issues on appeal, whether: (1) the trial court abused its

 discretion in allowing Defendant to represent himself; (2) the trial court lacked

 subject matter jurisdiction over the human trafficking charges; (3) the trial court

 erred in entering judgment for multiple counts of human trafficking for each victim;

 and, (4) the trial court erred in determining Defendant’s prior record level.

 IV. Argument

 A. Defendant’s Competency to Represent Himself

¶ 19 “[W]here matters are left to the discretion of the trial court, appellate review

 is limited to a determination of whether there was a clear abuse of discretion.” State

 v. Beck, __ N.C. App. __, ___, 2021-NCCOA-305, ¶ 28, 861 S.E.2d 575, 582 (2021)

 (citation omitted).

¶ 20 Defendant argues the trial court’s statements concluding he had an “absolute

 right” to represent himself and the court’s failure to consider whether Defendant fell

 into the “gray area” of being competent enough to waive counsel is a mistake of law

 that requires a new trial.

¶ 21 The Sixth Amendment to the Constitution of the United States gives a criminal

 defendant the “right to proceed without counsel when he voluntarily and intelligently

 elects to do so.” Faretta v. California, 422 U.S. 806, 807, 45 L. Ed. 2d 562, 566 (1975).

¶ 22 Our Supreme Court has considered whether a defendant, who falls within the
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 “borderline competent” or “gray area” of defendants with mental illness, should be

 precluded from self-representation. State v. Lane, 365 N.C. 7, 18, 707 S.E.2d 210, 217

 (2011). “Borderline competent” was defined as “defendants who are competent to

 stand trial[,] but nonetheless lack the capacity to conduct trial proceedings without

 the assistance of counsel.” Id. at 19, 707 S.E.2d at 218.

¶ 23 In Lane, the defendant insisted on proceeding pro se on first-degree murder

 and statutory rape charges. Id. at 18, 707 S.E.2d at 217. During his competency

 hearing, the court concluded the defendant was largely illiterate, suffered from an

 anxiety disorder and possible Post Traumatic Stress Disorder, but determined

 defendant’s emotional, psychological, and mental difficulties did not render the

 defendant incompetent to proceed to trial and to make his own decisions. Id. at 16-

 17, 707 S.E.2d at 216. The defendant requested standby counsel to represent him on

 the day of trial. Id. The defendant was found guilty of first-degree murder and felony

 murder, first-degree kidnapping, first-degree statutory rape, first-degree statutory

 sex offense, and indecent liberties. Id. at 17, 707 S.E.2d at 217.

¶ 24 Our Supreme Court remanded to the trial court to determine if the defendant

 fell into the “borderline competent” category. Id. at 18, 707 S.E.2d at 217. Upon

 remand, and based on expert testimony of a psychiatrist and two competency

 hearings, the trial court found:

 defendant at all times understood the nature and object of
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 the proceedings against him, comprehended his own
 situation in reference to those proceedings, and was able to
 assist in his defense in a rational manner, such that any
 . . . failure regarding his comprehension of his own
 situation in reference to the proceedings was or would be a
 result of defendant’s willful, volitional failure to consider
 discovery and the evidence against him.

 Id. at 18–19, 707 S.E.2d at 217. Our Supreme Court concluded the defendant received

 a fair trial, free of prejudicial error. Id. at 40, 707 S.E.2d at 230.

¶ 25 The Supreme Court of the United States addressed this issue and held “a

 defendant who waives his right to the assistance of counsel [does not have to] be more

 competent than a defendant who does not, since there is no reason to believe that the

 decision to waive counsel requires an appreciably higher level of mental functioning

 than the decision to waive other constitutional rights.” Godinez v. Moran, 509 U.S.

 389, 399, 125 L. Ed. 2d 321 (1993).

¶ 26 Further, “the competence that is required of a defendant seeking to waive his

 right to counsel is the competence to waive the right, not the competence to represent

 himself.” Id. at 399, 125 L. Ed. 2d at 321. “[T]he trial judge will often prove best able

 to make more fine-tuned mental capacity decisions, tailored to the individualized

 circumstances of a particular defendant.” Lane, 365 N.C. at 21, 707 S.E.2d at 219

 (quotation marks omitted).

¶ 27 The Supreme Court stated the standard for competency “is whether the

 defendant has sufficient present ability to consult with his lawyer with a reasonable
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 degree of rational understanding and has a rational as well as factual understanding

 of the proceedings against him.” Godinez, 509 U.S. at 396, 125 L. Ed. 2d at 330

 (citation and quotation marks omitted).

¶ 28 In Indiana v. Edwards, the defendant had three competency hearings and the

 trial court dealt with a defendant who had been diagnosed with schizophrenia,

 repeatedly deemed incompetent by four separate disinterested psychiatrists and the

 court, based upon incoherent writings, delusions, and continuing schizophrenia, such

 that the State was worried about his ability to proceed pro se. Indiana v. Edwards,

 554 U.S. 164, 167-69, 171 L. Ed. 2d 345, 351-52 (2008). Unlike the defendant in

 Edwards, Defendant here did not have a long-established and documented history of

 serious mental illness.

¶ 29 Here, the trial court recognized, as the Supreme Court did in Edwards, that

 neither the State could limit representation, nor that Defendant lacked the mental

 capacity to conduct his own trial. See Edwards, 554 U.S. at 173, 171 L. Ed. 2d at 355.

 Godinez not Edwards applies to the instant case. Nothing in Edwards overrules the

 holding in Godinez that the Constitution of the United States permits a defendant

 who is competent to stand trial, may also waive his right to counsel and represent

 himself. Edwards, 554 U.S. at 172-174, 171 L. Ed. 2d at 353-55.

¶ 30 The record and the substantial interaction between the court and Defendant

 shows the court undertook a thorough and realistic account of Defendant’s mental
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 capacities and competence before concluding Defendant was competent to waive

 counsel and to proceed pro se. As in Lane, separate trial judges held two competency

 hearings regarding Defendant’s mental capacity.

¶ 31 After interacting with Defendant, considering Defendant’s medical conditions,

 testimony from Dr. Vance, and Dr. Vance’s forensic psychiatric evaluation of

 Defendant, two judges ruled Defendant was competent to proceed and to represent

 himself.

¶ 32 The trial court gave Defendant several opportunities to consider whether he

 wanted to be represented by counsel, and inquired whether Defendant’s decision was

 being made freely, voluntarily, and intelligently. Defendant demanded to represent

 himself numerous times.

¶ 33 Even were we to agree the trial court erred in allowing Defendant to represent

 himself, Defendant has made no showing he was prejudiced by his lack of counsel.

 Stand-by counsel was available to assist and was consulted to assist Defendant in

 navigating the proceedings.

¶ 34 Defendant was appointed several attorneys and disagreed with their methods

 of representation and recommendations. Any error in regard to his lack of

 representation claims was invited by Defendant. For these reasons, and because

 Defendant’s self-representation had no bearing on this issue, Defendant cannot show

 prejudice. Further, given the overwhelming evidence against Defendant of criminal
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 activity, any asserted error was harmless beyond a reasonable doubt. The trial

 court’s conclusion that Defendant was competent to stand trial and waive his right to

 counsel is affirmed.

 B. Sufficiency of Indictments

¶ 35 Defendant argues the indictments against him are insufficient because they

 are too general and were drafted to make it unclear of what conduct he was being

 accused.

¶ 36 The purpose of an indictment is “to identify clearly the crime being charged,

 thereby putting the accused on reasonable notice to defend against it and prepare for

 trial, and to protect the accused from being jeopardized by the State more than once

 for the same crime.” State v. Creason, 313 N.C. 122, 130, 326 S.E.2d 24, 29 (1985).

¶ 37 “[W]here an indictment is alleged to be invalid on its face, thereby depriving

 the trial court of its jurisdiction, a challenge to that indictment may be made at any

 time.” State v. Wallace, 351 N.C. 481, 503, 528 S.E.2d 326, 341 (2000). Under the

 North Carolina Constitution, an indictment is sufficient if it alleges every element of

 the offense. See State v. Greer, 238 N.C. 325, 327, 77 S.E.2d 917, 919 (1953).

¶ 38 Here, Defendant was charged in seventeen indictments with human

 trafficking of six different victims. The prosecutor charged Defendant with three

 counts of trafficking J.O. in a five-day period, five counts of trafficking A.C. in a

 thirteen-month period, two counts of trafficking H.M in a three-month period, two
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 counts of trafficking E.C. in a one-month period, three counts of trafficking A.B. in a

 sixteen-month period and one count of trafficking M.F. in a thirteen-month period.

 Each indictment for human trafficking included the following language:

 Between and including [DATE RANGE], in the County
 named above, the defendant named above unlawfully,
 willfully, and feloniously did knowingly or in reckless
 disregard of the consequences of the action, did recruit,
 entice, harbor, transport, provide, or obtain by any
 means another person [NAME OF VICTIM] with the
 intent that the other person, [NAME OF VICTIM], be
 held in sexual servitude. This act was in violation of
 North Carolina General Statutes Section 14-43.11(a).

¶ 39 N.C. Gen. Stat. § 14-43.11(a)(i) (2019) is unambiguous and defines “human

 trafficking” as occurring when the perpetrator “knowingly or in reckless disregard of

 the consequences of the action recruits, entices, harbors, transports, provides, or

 obtains by any means another person with the intent that the other person be held

 in involuntary servitude or sexual servitude.” The language used in the indictments

 in this case tracks the language of the statute word for word.

¶ 40 The indictments allege every element of the offense within a specific timeframe

 for each separate victim. See Greer, 238 N.C. at 327, 77 S.E.2d at 919. The

 indictments clearly allege the crimes of which Defendant was being charged and gave

 him notice to prepare and assert his defense. See Creason, 313 N.C. at 130, 326 S.E.2d

 at 29.

¶ 41 Defendant does not identify any essential element of human trafficking
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 omitted in his indictments. He alleges the indictments fail to specify facts that will

 protect him from double jeopardy, or, alternatively, that the indictments are

 multiplicitous. “If Defendant required greater specificity, he could have moved for a

 bill of particulars under N.C. Gen. Stat. § 15A-925 (2019) and/or for a special verdict

 sheet under N.C. Gen. Stat. § 15A-1340.16 (2019).” State v. Flow, __ N.C. App. __, __,

 2021-NCCOA-183 ¶ 70, 859 S.E.2d 224, 233 (2021). Defendant failed to move for

 either clarification here.

¶ 42 The State’s case provided an in-depth explanation of how it arrived at the

 indictments charged against Defendant. The prosecutor took into consideration the

 victims’ statements and evidence available when Defendant was charged with

 seventeen counts of human trafficking. These generalizations are risks prosecutors

 take in cases, as in illicit drug sales or child sex crimes, where multiple offenses may

 occur and continue for long periods of time.

¶ 43 Upon a later claim for double jeopardy, which issue is not before us, the burden

 would be on the State to find and present new evidence for other crimes not alleged

 here. Defendant’s argument the indictments are insufficient is without merit and

 overruled.

 C. Human Trafficking as a Separate Offense

 1. Standard of Review

¶ 44 Whether convictions are part of one continuing transaction such that the
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 multiple convictions violate double jeopardy, a motion to dismiss preserves the issue

 for appellate review. State v. Calvino, 179 N.C. App. 219, 632 S.E.2d 839 (2006). This

 issue is preserved for review by Defendant’s motion to dismiss for insufficient

 evidence. In reviewing the trial court’s denial of a motion to dismiss, this Court

 determines whether substantial evidence of each essential element of the offense is

 admitted, when the evidence is reviewed in the light most favorable to the State. State

 v. Lynch, 327 N.C. 210, 393 S.E.2d 811 (1990).

 2. Separate or Continuous

¶ 45 N.C. Gen. Stat. § 14-43.11 states:

 (a) A person commits the offense of human trafficking
 when that person (i) knowingly or in reckless disregard of
 the consequences of the action recruits, entices, harbors,
 transports, provides, or obtains by any means another
 person with the intent that the other person be held in
 involuntary servitude or sexual servitude or (ii) willfully or
 in reckless disregard of the consequences of the action
 causes a minor to be held in involuntary servitude or sexual
 servitude.

 (b) A person who violates this section is guilty of a Class C
 felony if the victim of the offense is an adult. A person who
 violates this section is guilty of a Class B2 felony if the
 victim of the offense is a minor.

 (c) Each violation of this section constitutes a separate
 offense and shall not merge with any other offense.

 N.C. Gen. Stat. § 14-43.11(a)-(c) (2019) (emphasis supplied).

¶ 46 Defendant argues the General Assembly did not intend to punish an offender
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 multiple times for what he asserts is the same continuing crime by allowing a

 prosecutor to charge countless offenses for each separate act an offender took in order

 to hold a victim in sexual servitude. Defendant’s and the dissent’s interpretation of

 the statute disregards the words “entice” and “harbor” and would result in

 perpetrators exploiting victims for multiple acts, in multiple times and places,

 regardless of the length of the timeframe over which the crimes occurred as long as

 the Defendant’s illegal actions and control over the victim were “continuous.”

¶ 47 Whether Defendant’s actions violate the elements of the statute is ultimately

 a matter of fact for the jury to determine. The jury acquitted Defendant on five counts

 of human trafficking of J.O. and E.C. Sufficient evidence was presented to the jury

 to enable it to unanimously reach its verdicts with care and discernment as between

 the evidence presented of various charges and multiple victims.

¶ 48 The statute and intent of the General Assembly are clear. Defendant’s

 arguments asserting human trafficking is a continual offense, analogous to

 kidnapping without a separate asportation, and may only be charged as one crime for

 each victim is without merit and overruled.

 3. Substantial Evidence

¶ 49 Defendant acknowledges the plain language of the human trafficking statute

 specifically indicates each violation constitutes a separate offense and does not merge.

 N.C. Gen. Stat. § 14-43.11(c). He argues what is not clear is what facts must coalesce
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 to constitute each violation.

¶ 50 “Substantial evidence is defined as such relevant evidence as a reasonable

 mind might accept as adequate to support a conclusion.” State v. Smith, 300 N.C. 71,

 78–79, 265 S.E.2d 164, 169 (1980). “[T]he question for the court is whether a

 reasonable inference of defendant’s guilt may be drawn from the circumstances. . . .

 the jury [is] to decide whether the facts, taken singly or in combination, satisfy [it]

 beyond a reasonable doubt that the defendant is actually guilty.” State v. Poole, 24

 N.C. App. 381, 384, 210 S.E.2d 529, 530 (1975) (citations and quotation marks

 omitted).

¶ 51 Here, three victims and Rivard testified how Defendant controlled the women

 with heroin, advertised them through multiple solicitations on online message

 boards, and required them to perform multiple sexual acts with customers for money

 in exchange for drugs, food, transportation, and shelter. All three women testified

 Defendant had kept the victims in his home or in hotel rooms and drove them to a

 number of cities for them to be held in sexual subjugation and insisted they

 communicate with every customer. These victims also corroborated the testimony of

 other victims, despite the fact that many of them had not previously met. Viewed in

 a light most favorable to the State, Defendant has presented nothing to warrant

 reversal of the trial court’s denial of Defendant’s motion to dismiss.

¶ 52 Whether sufficient evidence supports each conviction of human trafficking is
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 for a jury to decide upon its review of the duly-admitted evidence and the demeanor

 and credibility of the witnesses, properly instructed on the applicable laws. The trial

 court’s denial of Defendant’s motion to dismiss is affirmed.

 D. Prior Record Level

 1. Standard of Review

¶ 53 “The determination of an offender’s prior record level is a conclusion of law that

 is subject to de novo review on appeal. Under a de novo review, the court considers

 the matter anew and freely substitutes its own judgment for that of the lower

 tribunal.” State v. Green, 266 N.C. App. 382, 385, 831 S.E.2d 611, 614 (2019) (internal

 citations and quotation marks omitted).

 2. Stipulation

¶ 54 Defendant argues his 1994 possession of drug paraphernalia conviction should

 not have been used in determining his prior record level. When assessing a sentence

 imposed by the trial court, the standard of review is to determine “whether the

 sentence is supported by evidence introduced at the trial and sentencing hearing.”

 State v. Sanders, 225 N.C. App. 227, 228, 736 S.E.2d 238, 239 (2013).

¶ 55 Each of a defendant’s prior convictions, proven by a preponderance of the

 evidence, is assigned points, which are used to calculate the prior record level of a

 felony offender. See N.C. Gen Stat. §15A-1340.14 (2019). Proof of a prior conviction

 can be established by, “(1) a stipulation of the parties,” or “(4) [a]ny other method
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 found by the court to be reliable.” N.C. Gen. Stat. § 15A-1340.14(f)(1),(4) (2019). “[A]

 defendant need not make an affirmative statement to stipulate to his . . . prior record

 level . . . particularly if [he] had an opportunity to object to the stipulation in question

 but failed to do so.” State v. Alexander, 359 N.C. 824, 829, 616 S.E.2d 914, 918 (2005).

¶ 56 In State v. Boyd, a pro se defendant made no comment from which this Court

 could infer his stipulation to his prior record. State v. Boyd, 200 N.C. App. 97, 104,

 682 S.E.2d 463, 468 (2009). While the court reviewed defendant’s worksheet, the

 defendant asked, “What does that mean?” Id. The defendant clearly did not

 understand the prior record worksheet, let alone stipulate to it. This Court compared

 the defendant in Boyd with the defendant in State v. Alexander. In Alexander, the

 defendant’s counsel recognized the defendant had no prior convictions to point to, so

 counsel was aware of the record and there was nothing to object to. Alexander, 359

 N.C. at 830, 616 S.E. 2d at 918.

¶ 57 Here, the State presented the sentencing worksheet and orally stated it had

 found Defendant to have accrued a total of fourteen points, making him “level five for

 felony sentencing purposes.” In response, Defendant asserted his reason for not

 signing the stipulation was the State implied he would be a record four or five, and

 Defendant thought he would be a level four. Defendant contested he was a level five

 because of the misdemeanor convictions. Defendant then addressed the points given

 for the convictions of injury to real property and possession of drug paraphernalia,
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 and not the felon possessing a firearm charge. Defendant reviewed and understood

 the prior record worksheet sufficiently to engage with the court on some former

 charges, while not addressing others.

¶ 58 After the State presented its evidence, the trial judge asked Defendant if there

 was “any evidence of other showing [Defendant] wish[ed] to make for purposes of

 sentencing.” After conferring with standby counsel, the trial judge offered Defendant

 an opportunity to say, “anything at all . . . regarding sentencing.” Defendant did not

 question nor address the State’s calculation of points.

¶ 59 While Defendant may not have “stipulated” to the worksheet itself in writing,

 Defendant failed to object to the classification of the felony firearm possession as a

 Class G felony each time he was presented an opportunity. Defendant’s argument is

 more in line with the defendant in Alexander. Defendant reviewed and understood

 the prior record worksheet, and he objected to portions of it. See Alexander, 359 N.C.

 at 830, 616 S.E. 2d at 918. By his silence, Defendant cannot now contest the

 remaining convictions to calculate his prior record level. Defendant’s argument is

 overruled.

 3. Prejudice or Substantially Similar

¶ 60 Defendant argues the State did not prove substantial similarity between the

 federal and state offenses of a felon in possession of a firearm and the firearm charge

 was improperly classified as a Class G felony. Defendant argues because the
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 timeframe the crimes against A.B. and M.F. occurred is after 1 December 2014, when

 N.C. Gen. Stat. § 90-113.22A went into effect, the State is required to prove the

 Defendant’s possession of drug paraphernalia conviction was related to a controlled

 substance other than marijuana.

¶ 61 Whether the State has to prove a paraphernalia conviction does not involve

 marijuana paraphernalia is controlled by State v. Green, 266 N.C. App. 382, 831

 S.E.2d 611, (2019). In Green, the defendant contended the trial court erred in

 classifying a 1994 paraphernalia conviction as a Class 1 misdemeanor because the

 State did not prove the paraphernalia conviction was unrelated to marijuana. Id. at

 388, 831 S.E. 2d at 616. The governing statute for the crime of paraphernalia only

 had one classification at the time the defendant’s conviction but was “subsequently

 divided . . . into two different classifications depending on the type of drug

 paraphernalia possessed.” Id.

¶ 62 Here, similar to the analysis for the Class G federal firearm conviction,

 Defendant was made aware of the State’s intention to use the 1994 paraphernalia

 conviction in calculating his prior record level, as it was listed on the same sentencing

 sheet as the Class G federal firearm conviction. Defendant acknowledged “possession

 of drug paraphernalia . . . [is] a misdemeanor.”

¶ 63 The trial court responded the paraphernalia conviction “is noted as a

 misdemeanor on the worksheet,” to which Defendant responded, “Yes, Your Honor.”
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

 Defendant indicated from his understanding of the charge he “contest[s] that [he is]

 a level five.” The trial court provided Defendant an opportunity to confer with

 standby counsel, stated Defendant will “have the opportunity to offer evidence” for

 his contention that he was not a prior record level five. Defendant chose not to do so.

¶ 64 As noted above, a defendant may concede to a conviction through silence in

 some circumstances. See Alexander, 359 N.C. at 828-29, 616 S.E.2d at 917-18.

 “Defendant—as the person most familiar with the facts surrounding his offense—

 stipulated that his [prior] conviction was classified as a Class 1 misdemeanor. Thus,

 Defendant was stipulating that the facts underlying his conviction justify that

 classification.” Green, 266 N.C. App at 388, 831 S.E.2d at 616 (citations and internal

 quotation marks omitted).

¶ 65 By not objecting to the inclusion of the paraphernalia conviction when given

 an opportunity, and by not presenting any evidence to support his contention,

 Defendant left the trial court without a means to determine the validity of his

 contention. The trial court’s classification of Defendant’s 1994 possession of drug

 paraphernalia conviction as a Class 1 misdemeanor and inclusion on the worksheet

 was proper for purposes of determining Defendant’s prior record level. Defendant

 has failed to show any error in the trial court’s determination of his prior record level.

 His argument is overruled.

 V. Conclusion
 STATE V. APPLEWHITE

 2021-NCCOA-694

 Opinion of the Court

¶ 66 Defendant was competent to waive counsel, to stand trial, and proceed pro se.

 The indictments sufficiently asserted each element of the charged crimes. Human

 trafficking is statutorily defined as a separate offense for each instance and the

 statute expressly provides the offenses do not merge.

¶ 67 The trial court did not err in sentencing. Defendant received a fair trial, free

 from prejudicial error he preserved or asserted. We find no error in the jury’s verdicts

 or in the judgments entered thereon. It is so ordered.

 NO ERROR.

 Judge DIETZ concurs.

 Judge ARROWOOD concurs in part and dissents in part by separate opinion.
 No. COA20-610 – State v. Applewhite

 ARROWOOD, Judge, concurring in part and dissenting in part.

¶ 68 I respectfully dissent from the majority’s opinion that the trial court properly

 convicted defendant of multiple counts per victim of human trafficking. In what is

 an issue of first impression for our Courts, the majority has ruled that a violation of

 North Carolina’s human trafficking statute does not constitute a continuing offense.

 However, our precedent—specifically, past issues of first impression addressing

 statutory construction—clearly instructs that, where a criminal statute does not

 define a unit of prosecution, a violation thereof should be treated as a continuing

 offense.

¶ 69 Here, I do not dispute that defendant is guilty of human trafficking violations,

 nor do I dispute that the facts on the Record paint a chilling and horrifying picture

 for each of the alleged victims. However, as I will discuss in more detail as follows,

 the State has failed to show defendant should be convicted on multiple counts of

 human trafficking per victim, as opposed to a single, continuing count per victim.

¶ 70 Additionally, in this specific case, convicting defendant of one count of human

 trafficking per victim1 would have the effect of reducing defendant’s prison sentence

 from a term of 240-to-312 years to a term of 160-to-208 years—in other words, it

 would leave undisturbed the fact that defendant will spend the rest of his natural life

 in prison.

 1 Specifically, the four victims the jury found defendant had trafficked: A.C., H.M., A.B.,
 and M.F.
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

¶ 71 Thus, I would remand this case with instruction to vacate all but one count of

 trafficking per victim. I concur in the result with the majority’s opinion with regard

 to the remaining issues on appeal.

¶ 72 Defendant was indicted on 17 counts of human trafficking involving six victims

 in violation of N.C. Gen. Stat. § 14-43.11, which in pertinent part provides:

 (a) A person commits the offense of human trafficking
 when that person . . . knowingly or in reckless disregard
 of the consequences of the action recruits, entices,
 harbors, transports, provides, or obtains by any means
 another person with the intent that the other person be
 held in involuntary servitude or sexual servitude . . . .

 (b) A person who violates this section is guilty of a Class C
 felony if the victim of the offense is an adult. . . .

 (c) Each violation of this section constitutes a separate
 offense and shall not merge with any other offense.

 N.C. Gen. Stat. § 14-43.11 (2019)

¶ 73 Each indictment under which defendant was convicted was a short form

 indictment alleging that from Date A to Date B (these dates usually being over a

 several-month period and with same dates on each of multiple indictments for each

 victim) defendant “did recruit, entice, harbor, transport, provide or obtain by any

 means another person, [the victim,] with intent that the other person, [the same

 victim], be held in sexual servitude.”

¶ 74 During the charge conference at trial, the trial court initiated a discussion of
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 whether the violation of human trafficking law constituted a continuing offense:

 It appears to the Court by my count that [defendant] is
 charged with a total of 17 counts of human trafficking,
 basically one in each of the case file numbers 16 CRS 2685
 through 16 CRS 2701.

 ....

 I mean, the same dates of offense are alleged with each
 particular woman. Help me understand why human
 trafficking is not simply a continuing offense. To be more
 specific, why there should not simply be one human
 trafficking charge with regard to each of the alleged
 victims, each woman?

¶ 75 To this, the State replied, reading from subsection (c) of N.C. Gen. Stat. § 14-

 43.11:

 So, every violation of this section constitutes a separate
 offense and shall not merge with any other offense. . . . So,
 every single act the [d]efendant committed is a separate
 offense. So, when I sat down through the process of
 deciding what to indict, every time the [d]efendant drove
 one of the victims or his co-[d]efendant drove one of the
 victims to a different location, posted them on Backpage,
 did one of these other things, that was yet another offense
 of human trafficking.

¶ 76 The trial court continued: “How am I to distinguish and how is the jury to

 distinguish each of these alleged acts involving [J.O.], or [A.C.], or so forth?” The

 State then explained how it had created “a list” in which it illustrated how certain

 events corresponded to specific acts. The State also claimed it had, though it was not

 required to do so, “limited tremendously unnecessarily” the number of charges
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 against defendant, further claiming it “could have indicted 250 counts . . . under the

 [human trafficking] statute.” The State explained it had “alleged the things in the

 statute or in the indictment as appropriate” and “laid it out so [the State] ha[d] a

 guide” that it “intended to go through with the jury. This defendant with the victim

 did these three things he’s charged with.”

¶ 77 The trial court requested to see the State’s list. After the trial court obtained

 the State’s list, and following discussions between the State and the trial court about

 the prosecutor’s shorthand notes on the State’s list, the trial court stated:

 But it still seems to me this jury is going to be extremely
 confused if the Court does not help the jury distinguish
 between these various counts of human trafficking in some
 fashion. And I cannot do it by the dates here since the same
 dates are alleged -- same range of dates for each count.

 ....

 [I]t’s also the Court’s job to make sure that the jury
 understands the instructions and understands the charges
 the jury has to consider. So, I go back to my original
 question.

 ....

 How do I distinguish so that the jury understands, among
 these various charges of human trafficking with regard to
 these victims. That each of the alleged victims have more
 than one human trafficking charge involved?

¶ 78 The State replied:

 I legally don’t think you have to. I legally think -- and if --
 I may be completely overestimating my ability to impart to
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 the jury what I intend to impart to the jury is let’s say a
 victim has three counts of human trafficking. If you believe
 this [d]efendant did one of these three things -- any of the
 ways that human trafficking could be done based on the
 evidence you heard, you can find him guilty of those three
 counts of human trafficking.

¶ 79 After a brief recess, the trial court, stated:

 Accordingly, the State will submit each of the trafficking
 offenses -- human trafficking offenses charged as to each
 female. So, that means, of course, Madam Clerk that there
 will be . . . three trafficking offenses with regard to [J.O.],
 five with regard to [A.C.], two with regard to [H.M.], two
 with regard to [E.C.], three with regard to [A.B.], two with
 regard to [M.F.].

¶ 80 During the State’s closing argument, one of the prosecutors stated as follows:

 Human trafficking. . . . You are going to hear words like
 recruit, entice, harbor, transport, obtain by any means. All
 of those things, that one act, is a separate act of human
 trafficking. Let’s take one of the -- any of the victims.

 You have a recruitment conversation, come work for me,
 join the team. I can give you good heroin. I can give you a
 place to stay. That is an act of human trafficking, to recruit
 another person for this purpose. That’s one thing that you
 can do. To transport is another thing that you can do. This
 is why we talk about specific acts that were done by
 [defendant] with the victims and what they did to do his
 operation.

 Every time he put a girl in a car and drove them to Raleigh
 that would be transportation. That was an act of human
 trafficking, because it was for the purpose of sex for money
 and coercion was used. We will talk about those in a
 second. But every single time he put one of these girls in
 the car to do this business, that was an act of human
 trafficking.
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 ....

 Every single act is a separate act of human trafficking. Do
 they recruit or do any of these things to work as a prostitute
 and there is coercion? Now, coercion can come in two forms
 in this case. Coercion -- as you understand it, threats of
 force, know [sic] violent acts, slapping somebody around,
 you’re going to go in this room and do this thing. To be
 certain those are acts of coercion. But another way coercion
 can be proven in the State of North Carolina is by the
 delivery of a controlled substance, period.

 So, what human trafficking boils down to are these three
 things, that he committed one of these acts: recruiting,
 enticing, harboring, transporting, providing, obtaining
 person for the purposes of prostitution, and delivery of
 controlled substances. I think about the evidence and as
 you heard from each of the victims and put those two things
 together, every time one of these acts is committed that’s
 another human trafficking count.

¶ 81 Then, the State went on to discuss the victims. As the Record shows, as follows,

 the State does not individualize each human trafficking charge, as it had told the trial

 court it would do. In fact, the State does not elucidate or distinguish between the

 charges per victim at all.

¶ 82 First, the State discussed the charges involving J.O. as an example of what the

 jurors should expect to find on the verdict sheets; the State did not address the

 charges of human trafficking or the events involving J.O. specifically.

¶ 83 Then the State discussed the trafficking charges involving A.C.:

 [T]hey’re going to have five different pieces of paper with
 [A.C.] as the victim.
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 ....

 So, when you start your conversation and this kind of gets
 into the obnoxious part, you’re going to go, we heard so
 much. We heard so much. He did so many things with
 [A.C.]. You’re right. He did. So, what do you do with that?
 Now, as an example with [A.C.], you can traffic by
 transportation for example, right? And there are going to
 be five counts of human trafficking. If you believe that he
 transported her or [co-defendant] did so and they were
 working together, five times, and the other elements are
 met, you’re done. Check the block and those are five counts
 of human trafficking.

 ....

 And here’s the interesting thing. If five of you think that
 he transported her five times and seven of you think that
 he enticed her five times, you don’t have to agree, as long
 as each of you agree that he did each of the things -- he did
 one of the things. You don’t have to -- we don’t have to
 prove that he transported and enticed and did all these
 things. We just have to prove one of those things, that first
 count. So, it’s incredibly simple if it kind of boils down to
 that and you don’t have to agree as to which one, on each
 offense. You just don’t.

 So, when you start your discussions, you’re going to have
 those conversations. Well, how many times do you think
 he enticed her, or he harbored her or he transported her, I
 mean, you’re already done. You’ve done all three of those
 things. That’s three right there. Did he transport her more
 than twice? Sure. Did he harbor her? Every day. Every
 day she was prostituting and he was harboring her, giving
 her a place to stay that he was paying for, that’s human
 trafficking.

¶ 84 Regarding the charges involving H.M., the State stated:

 [Y]ou’re not going to have a hard time finding that he
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 transported her twice to different cities and that he
 harbored her or that he recruited her. Just a conversation
 he had before she started working for him is trafficking.
 He had that initial recruitment conversation, hey get on
 the team, come work for me. Maybe he had another one
 later. And so he recruited and he transported, and he
 enticed her to make money as a prostitute and for buying
 her drugs to do so.

¶ 85 Next, the State discussed E.C. and A.B.:

 [E.C.], you didn’t see, but you heard about. There are going
 to be two different counts with her. . . . [E.C.], she wasn’t
 there for long. That’s why you will only have two counts.
 [A.B.] testified you are going to have these different counts
 as well. Again, it starts with a case number. You’re going
 to have those three human trafficking, promotion of
 prostitution, and conspiracy is the first count. And then
 you’re going to have -- on the other. The same thing. She
 told you the story. She told you how everything worked.

¶ 86 This was the extent of the State’s addressing the various counts of human

 trafficking to the jury.

¶ 87 At the close of all evidence, the trial court instructed the jury on the human

 trafficking charges as follows:

 [D]efendant has been charged with 17 counts of human
 trafficking involving sexual servitude. Three counts of this
 offense pertain to [J.O.], five counts to [A.C.], two counts to
 [H.M.], two counts to [E.C.], three counts to [A.B.], and two
 counts to [M.F.]. The counts are distinguished on the
 verdict sheets by the names of the alleged victims of human
 trafficking and by the dates of the alleged offenses. You
 will find these names and dates on the upper right-hand
 corner of the verdict sheets beneath the file numbers. You
 are to return a separate verdict as to each count. For you
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 to find the defendant guilty of any count of human
 trafficking, you must be convinced beyond a reasonable
 doubt of the defendant’s guilt of that count.

 The verdict sheets provided to the jury merely distinguished between victims, as the

 individual charges presented the same date range in the “upper right-hand corner”

 per victim, not per count.2

¶ 88 The jury ultimately returned a verdict of guilty on a total of 12 counts: five

 counts of human trafficking A.C. from 1 December 2012 through 31 January 2013;

 two counts for H.M. from 1 January 2014 through 30 March 2014; three for A.B., one

 from 1 January 2014 through 30 August 2015, unlike in the indictments involving

 her, and the other two from 1 January 2014 through 30 April 2015, matching the

 indictments; and two for M.F. from 1 March 2014 through 30 April 2015.

¶ 89 Defendant now argues on appeal that the trial court erred in entering

 judgment for multiple counts of human trafficking for each victim and contends

 instead that his human trafficking violations constitute a single, continuing offense

 per victim.

¶ 90 “Where the language of a statute is clear and unambiguous, there is no room

 for judicial construction[,] and the courts must give [the statute] its plain and definite

 2 With the exception of the three charges involving A.B., in which one, as I discuss in the

 following paragraph, does not match the date range provided in the corresponding
 indictments.
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 meaning, and are without power to interpolate, or superimpose, provisions and

 limitations not contained therein.” In re Redmond, 369 N.C. 490, 495, 797 S.E.2d

 275, 279 (2017) (citation and quotation marks omitted) (alterations in original).

 “When, however, a statute is ambiguous, judicial construction must be used to

 ascertain the legislative will.” Purcell v. Friday Staffing, 235 N.C. App. 342, 347, 761

 S.E.2d 694, 698 (2014) (citation and quotation marks omitted).

¶ 91 “A continuing offense . . . is a breach of the criminal law not terminated by a

 single act or fact, but which subsists for a definite period and is intended to cover or

 apply to successive similar obligations or occurrences.” State v. Maloney, 253 N.C.

 App. 563, 571, 801 S.E.2d 656, 661 (2017) (quotation marks omitted) (alteration in

 original) (quoting State v. Johnson, 212 N.C. 566, 570, 194 S.E. 319, 322 (1937)). “For

 example,” as I shall discuss in more detail later, “kidnapping is a continuing offense

 that lasts from the time of initial confinement until the victim regains free will[.]”

 Id., 801 S.E.2d at 662 (citation omitted).

¶ 92 Although, as discussed above, this is an issue of first impression for our Courts,

 our Courts have otherwise dealt with statutory construction under similar

 circumstances. In State v. Smith, for example, our Supreme Court addressed the

 issue of the allowed unit of prosecution for violations of N.C. Gen. Stat. § 14-190.1;

 this, at the time, was an issue of first impression. State v. Smith, 323 N.C. 439, 440-

 41, 373 S.E.2d 435, 436-37 (1988).
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

¶ 93 At that time, N.C. Gen. Stat. § 14-190.1, which criminalizes distribution of

 obscene literature, provided:

 It shall be unlawful for any person, firm or corporation to
 intentionally disseminate obscenity. A person, firm or
 corporation disseminates obscenity within the meaning of
 this article if he or it:

 (1) sells, delivers or provides or offers or agrees to sell,
 deliver or provide, any obscene writing, picture, record
 or other representation or embodiment of the obscene;
 or

 ....

 (3) publishes, exhibits or otherwise makes available
 anything obscene; or

 (4) exhibits, presents, rents, sells, delivers, or provides, or
 offers or agrees to exhibit, present, rent or to provide:
 any obscene still or motion picture, film, film strip or
 projection slide, or sound recording, sound tape, or
 sound track, or any matter or material of whatever form
 which is a representation, embodiment, performance, or
 publication of the obscene.

 Id. at 440-41, 373 S.E.2d at 436 (quoting N.C. Gen. Stat. § 14-190.1 (1986 & Cum.

 Supp. 1987)).

¶ 94 Reading the statute on its face, the Supreme Court noted: “The statute makes

 no differentiation of offenses based upon the quantity of the obscene items

 disseminated.” Id. at 441, 373 S.E.2d at 436 (citation omitted). Thus, the issue before

 the Supreme Court was whether the Court of Appeals erred by affirming the trial

 court’s conviction of defendant for three “separate offenses arising out of the
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 dissemination of” two magazines and one film in the same transaction. Id. at 440,

 373 S.E.2d at 436.

¶ 95 In its analysis, our Supreme Court cited Bell v. United States, stating: “if

 Congress does not fix the punishment for a federal offense clearly and without

 ambiguity, doubt will be resolved against turning a single transaction into multiple

 offenses when we have no more to go on than the present case furnishes.” Id. at 442,

 373 S.E.2d at 437 (quoting Bell v. United States, 349 U.S. 81, 84, 99 L. Ed. 905, 910-

 11 (1955)).

¶ 96 Applying Bell, our Supreme Court concluded: “until the General Assembly

 unambiguously declares a contrary intent, we should assume that a single sale in

 contravention of [N.C. Gen. Stat.] § 14-190.1 does not spawn multiple indictments.”

 Id. at 444, 373 S.E.2d at 438 (citation and quotation marks omitted). It further

 stated: “This construction of the statute is in accord with the general rule in North

 Carolina that statutes creating criminal offenses must be strictly construed against

 the State.” Id. (emphasis added) (citing State v. Hageman, 307 N.C. 1, 9, 296 S.E.2d

 433, 438 (1982); State v. Ross, 272 N.C. 67, 157 S.E.2d 712 (1967)).

¶ 97 Accordingly, the Supreme Court concluded, because the defendant had sold

 three items containing obscene literature in a single transaction, he could only be

 found guilty of one count in violation of N.C. Gen. Stat. § 14-190.1. Id. It thus

 remanded the case to the Court of Appeals to further remand to the trial court. Id.
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

¶ 98 Addressing another issue of first impression, our Supreme Court recently

 applied Smith in State v. Conley, 374 N.C. 209, 839 S.E.2d 805 (2020). There, the

 Supreme Court addressed the proper unit of prosecution under N.C. Gen. Stat. § 14-

 269.2(b), which prohibits the possession of firearms on school property. Conley, 374

 at 212, 839 S.E.2d at 807. The defendant in question had been “convicted and

 sentenced on five separate counts for violation of the statute based on an incident in

 which he was discovered on the grounds of a school in possession of five guns.” Id. at

 209, 839 S.E.2d at 806.

¶ 99 N.C. Gen. Stat. § 14-269.2(b) provides: “It shall be a Class I felony for any

 person knowingly to possess or carry, whether openly or concealed, any gun, rifle,

 pistol, or other firearm of any kind on educational property or to a curricular or

 extracurricular activity sponsored by a school.” N.C. Gen. Stat. § 14-269.2(b) (2019).

¶ 100 Citing its prior opinion in Smith, our Supreme Court reasoned:

 Although the facts in Smith are distinguishable from those
 of the present case and the convictions there arose under a
 different statute than the one presently before us, we are
 nevertheless compelled to apply the same legal principles
 that we applied in Smith in interpreting N.C.[Gen. Stat.] §
 14-269.2(b). Because it is clear that N.C. [Gen. Stat.] § 14-
 269.2(b) shares a parallel structure with the statute at
 issue in Smith, our rationale for applying the rule of lenity
 in that case applies equally here.

 Conley, 374 N.C. at 214, 839 S.E.2d at 808.
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

¶ 101 So, “[d]ue to the statute’s failure to clearly express the General Assembly’s

 intent as to the allowable unit of prosecution, [the Supreme Court] determined that

 this ambiguity should be resolved in favor of lenity toward the defendant.” Id. at 213,

 839 S.E.2d at 808 (citation omitted). Accordingly, the Supreme Court, bound by

 Smith, concluded that the defendant could be convicted of “only a single violation of

 this statute[,]” as opposed to five. Id. at 217, 839 S.E.2d at 810.

¶ 102 Our Court has also applied Smith. In State v. Howell, presenting yet another

 issue of first impression for our Courts, we addressed the unit of prosecution for

 violations of child pornography statutes. State v. Howell, 169 N.C. App. 58, 609

 S.E.2d 417 (2005). There, “a jury [had] convicted [the] defendant of 43 counts of third-

 degree sexual exploitation of a minor.” Id. at 59, 609 S.E.2d at 418. On appeal, the

 “defendant contend[ed] that the charges against him were multiplicitous. [The]

 [d]efendant assert[ed] that the possession of photos on a single hard drive

 constitute[d] only one offense or, in the alternative, no more than five separate counts,

 one for each downloaded zip file.” Id. at 61, 609 S.E.2d at 419.

¶ 103 At the time, the applicable statute provided: “A person commits the offense of

 third degree sexual exploitation of a minor if, knowing the character or content of the

 material, he possesses material that contains a visual representation of a minor

 engaging in sexual activity.” Id. (quoting N.C. Gen. Stat. § 14-190.17A(a) (2000)). We

 observed:
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 N.C. [Gen. Stat.] § 14-190.13 (2000) defines “material” as:
 “Pictures, drawings, video recordings, films or other visual
 depictions or representations but not material consisting
 entirely of written words.” [The] [d]efendant suggest[ed]
 that because the definition of “material” specifies items in
 the plural, the photographs found on his computer
 constitute only a single charge.

 Id. (citation omitted).

¶ 104 In our reasoning, we distinguished Smith by the use of the words “a” versus

 “any” in legislation:

 In Smith, the [Supreme] Court held that a single sale of
 multiple pornographic magazines could not yield multiple
 convictions. However, Smith is also easily distinguished
 from this case, as it involved the defendant’s conviction
 under N.C. [Gen. Stat.] § 14-190.1(a), for intentionally
 disseminating obscenity. The statute involved here, N.C.
 [Gen. Stat.] § 14-190.17A(a), differs from the one in Smith
 in two important ways. First, although enacted at the
 same time and under the same bill as N.C. [Gen. Stat.] §
 14-190.17A(a), the statute in Smith makes it illegal to sell
 “any obscene writing, picture or other representation or
 embodiment of the obscene.” The [Supreme] Court
 reasoned that this language, using “any” rather than “a,”
 failed to indicate a “clear expression of legislative intent to
 punish separately and cumulatively for each and every
 obscene item.” By contrast, in N.C. [Gen. Stat.] § 14-
 190.17A(a), the legislature chose to use the term “a” visual
 depiction, thus indicating a different intent.

 Id. at 63, 609 S.E.2d at 420 (citations omitted) (emphases in original).
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

¶ 105 Accordingly, “defendant’s multiple convictions [we]re consistent with the

 language and intent of the child pornography statutes and d[id] not violate his right

 to be free from double jeopardy.” Id. at 64, 609 S.E.2d at 421.

¶ 106 Our Courts have also addressed similar issues of statutory construction with

 respect to cases involving kidnapping. For example, in State v. White, the defendant

 at issue “was charged with armed robbery, two counts of first degree rape, three

 counts of first degree sexual offense and three counts of first degree kidnapping.”

 State v. White, 127 N.C. App. 565, 569, 492 S.E.2d 48, 50 (1997). With respect to the

 kidnapping charges,

 [t]he first count of kidnapping charged defendant with
 confining the victim in his vehicle at [an] intersection
 . . . for the purpose of facilitating the commission of robbery
 and not releasing her in a safe place. The second count of
 kidnapping charged defendant with removing the victim
 from the intersection to a park for the purpose of
 facilitating the commission of rape or sexual offenses and
 sexually assaulting the victim and not releasing her in a
 safe place. The third count of kidnapping charged
 defendant with removing the victim from the park to
 [another man]’s residence for the purpose of facilitating the
 commission of rape or sexual offenses and sexually
 assaulting the victim and not releasing her in a safe place.

 Id. “On appeal, defendant first contends the trial court erred by denying his motion

 to submit only a single count of kidnapping to the jury. Defendant argues that the

 kidnapping was a single, continuing offense.” Id.

¶ 107 At the time, the applicable kidnapping statute provided:
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 (a) Any person who shall unlawfully confine, restrain,
 or remove from one place to another, any other
 person 16 years of age or over without the consent of
 such person . . . shall be guilty of kidnapping if such
 confinement, restraint or removal is for the purpose
 of:

 ....

 (2) Facilitating the commission of any felony or facilitating
 flight of any person following the commission of a
 felony; or

 (3) Doing serious bodily harm to or terrorizing the person
 so confined, restrained or removed or any other person.

 ....

 (b) There shall be two degrees of kidnapping as defined
 by subsection (a). If the person kidnapped either
 was not released by the defendant in a safe place or
 had been seriously injured or sexually assaulted, the
 offense is kidnapping in the first degree and is
 punishable as a Class D felony. If the person
 kidnapped was released in a safe place by the
 defendant and had not been seriously injured or
 sexually assaulted, the offense is kidnapping in the
 second degree and is punishable as a Class E felony.

 Id. at 570, 492 S.E.2d at 51 (alterations in original) (quoting N.C. Gen. Stat. § 14-39

 (1993)).

¶ 108 This Court noted that “N.C. Gen. Stat. § 14-39 contains no express language

 delineating each act of confinement, restraint or removal during a kidnapping as a

 separate unit of prosecution.” Id. Then, applying Smith, we stated: “Our Supreme

 Court has held that, if the General Assembly fails to establish with clarity the precise
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 unit of prosecution for a particular crime, the statute defining such crime must be

 strictly construed against the State.” Id. (citing Smith, 323 N.C. at 444, 373 S.E.2d

 at 438).

¶ 109 We then reasoned:

 If we interpret N.C. Gen. Stat. § 14-39 to mean that each
 place of confinement or each act of asportation occurring
 during a kidnapping constitutes a separate unit of
 prosecution, the State would then be authorized to divide a
 single act of confinement into as many counts of
 kidnapping as the prosecutor could devise. . . . Surely this
 is not what the General Assembly intended. Common
 sense dictates that the offense of kidnapping should
 encompass the entire period of a victim’s confinement from
 the time of the initial act of restraint or confinement until
 the victim’s free will is regained.

 Id. at 570-71, 492 S.E.2d at 51 (emphasis added).

¶ 110 “We therefore h[e]ld that the offense of kidnapping under N.C. Gen. Stat. § 14-

 39 is a single continuing offense, lasting from the time of the initial unlawful

 confinement, restraint or removal until the victim regains his or her free will.” Id. at

 571, 492 S.E.2d at 51. Thus, we concluded the defendant had committed one act of

 kidnapping, beginning when the victim was removed from her vehicle until she was

 released in a motel parking lot. Id., 492 S.E.2d at 52.

¶ 111 Again, current North Carolina human trafficking laws, as they pertain to adult

 victims, state:

 (a) A person commits the offense of human trafficking
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 when that person . . . knowingly or in reckless disregard
 of the consequences of the action recruits, entices,
 harbors, transports, provides, or obtains by any means
 another person with the intent that the other person be
 held in involuntary servitude or sexual servitude . . . .

 (b) A person who violates this section is guilty of a Class C
 felony if the victim of the offense is an adult. . . .

 (c) Each violation of this section constitutes a separate
 offense and shall not merge with any other offense.

 N.C. Gen. Stat. § 14-43.11.

¶ 112 Per Howell and Conley, our human trafficking statute is clear in its use of the

 word “another” in subsection (a) as it pertains to the victim: the law intends to protect

 individual victims from human trafficking, and, read in conjunction with subsection

 (c), anyone in violation thereof will, at a minimum, face charges for each victim

 affected. Additionally, much like the laws at issue in Howell and Conley, our human

 trafficking statute is also silent on its intended unit of prosecution. Although the

 majority insists subsection (c) of this statute is clear and controlling here, it does not

 illustrate how or when a violation constitutes “a separate offense” and does not

 provide the conditions under which one violation ends and another begins.

¶ 113 Furthermore, here, the Record throughout does not shed light as to why

 defendant was, or should be, convicted of 12 counts of human trafficking.

¶ 114 First, defendant was indicted on: three counts of human trafficking involving

 J.O., all occurring “between and including March 12, 2015 to March 16, 2015”; five
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 counts involving A.C. “between and including December 1, 2012 through

 January 31, 2013”; two counts involving H.M. “between and including

 January 1[,] 2014 to March 30, 2014”; two counts involving E.C. “between and

 including July 1, 2013 through August 5, 2013”; three counts involving A.B. “between

 and including January 1, 2014 to April 30, 2015”; and two counts involving M.F.

 “between and including March 1, 2014 to April 30, 2015[.]” This was the extent of the

 detail provided in the indictments for each count.

¶ 115 In fact, the indictments do not give any indication as to which of the multiple

 actions prohibited under N.C. Gen. Stat. § 14-43.11—recruiting, enticing, harboring,

 transporting, providing, or obtaining—are covered by each indictment or when any

 specific act of trafficking commenced or concluded, as we are provided the same date

 range for multiple counts for each victim. In addition, although the victims’

 testimonies may well have supported separate and distinct crimes of trafficking, the

 indictments are not drawn in such a way as to differentiate the separate and distinct

 crimes that could have been charged.3

 3 In other words, these indictments do not specify what defendant did under N.C. Gen. Stat.

 § 14-43.11 to spur each indictment. This is especially interesting when compared and
 contrasted with, for example, the manner in which the State generally prosecutes drug
 trafficking violations. See, e.g., N.C. Gen. Stat. § 90-95 (2019) (making it unlawful to
 “manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a
 controlled substance; . . . create, sell or deliver, or possess with intent to sell or deliver, a
 counterfeit controlled substance;. . . [or] possess a controlled substance”); State v. Williams,
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

¶ 116 Nonetheless, defendant was found guilty of: five counts of human trafficking

 involving A.C. from 1 December 2012 through 31 January 2013; two counts involving

 H.M. from 1 January 2014 through 30 March 2014; three involving A.B., one from

 1 January 2014 through 30 August 2015 and the other two from 1 January 2014

 through 30 April 2015; and two involving M.F. from 1 March 2014 through

 30 April 2015. Again, nowhere within the Record or the State’s arguments at trial is

 it shown that defendant committed each and every one of these violations in each and

 every timeframe as listed in the jury verdicts.

¶ 117 In summary, neither the indictments, the State’s closing argument at trial, the

 jury instructions, nor the jury verdict sheets distinguish between the individual

 counts of human trafficking upon which defendant was ultimately convicted.

 2021-NCCOA-263, ¶¶ 3-4 (unpublished) (in which the defendant was indicted under N.C.
 Gen. Stat. § 90-95 on counts of, among others, trafficking opium or heroin by possession;
 trafficking opium or heroin by transportation; trafficking opium or heroin by manufacture;
 and possession with intent to manufacture, sell, or deliver heroin); State v. Surratt, 2021-
 NCCOA-407, ¶ 3 (in which the defendant was indicted on, among others, “one charge of
 possession with intent to manufacture, sell, and deliver a controlled substance, namely
 cocaine . . . ; [and] one charge of sale and delivery of a controlled substance, namely
 cocaine[.]”); State v. McMillan, 272 N.C. App. 378, 381, 846 S.E.2d 575, 578 (2020)
 (“Defendant was . . . indicted o[n] Trafficking in Cocaine by Possession, [and] PWISD
 Cocaine[.]”); State v. Coleman, 271 N.C. App. 91, 93, 842 S.E.2d 631, 633 (2020) (“Defendant
 was indicted for possession with intent to manufacture, sell, deliver hydrocodone; selling
 and delivering hydrocodone[;] possession with intent to manufacture, sell, deliver
 alprazolam; and selling and delivering alprazolam for the 1 February 2016 transactions.
 Defendant was indicted for two counts of trafficking opium for the transactions on 4
 February and 5 February 2016.”).
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

¶ 118 Furthermore, despite the fact that the State insists it distinguished the various

 charges in its own notes, and despite its reasoning that “every single time [defendant]

 put one of these girls in the car to do this business, that was an act of human

 trafficking[,]” there is nothing before us, and thus nothing before the jury at trial, to

 show this. In fact, even though, during its closing statement, the State correctly

 informed the jury that any act listed in N.C. Gen. Stat. § 14-43.11—recruit, entice,

 harbor, transport, provide, or obtain—constitutes a commission of human trafficking,

 the State did not show the 12 exact and specific instances—five, two, three, and two

 per victim, respectively—in which defendant enticed, harbored, transported,

 provided, or obtained the victims.

¶ 119 On the contrary, as reflected by the swaths of time listed in the indictments

 and jury verdicts, and as confirmed by the victims’ testimonies, the Record tends to

 show that defendant trafficked each victim over an extended period of time per victim.

 With nothing before us tending to prove defendant should be found guilty of 12 counts

 of human trafficking, the number 12 here is nothing other than arbitrary.

¶ 120 Though the majority insists its holding is necessary to avoid convicting future

 perpetrators who commit multiple violations of a single continuing offense, the

 majority’s opinion provides the State an unfettered license to prosecute a defendant

 on as many counts as it wishes without actually distinguishing the counts—a result

 that starkly contrasts with “the general rule in North Carolina that statutes creating
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 criminal offenses must be strictly construed against the State.” Smith, 323 N.C. at

 444, 373 S.E.2d at 438 (emphasis added).

¶ 121 “If we interpret N.C. Gen. Stat. § 14-[43.11] to mean that each” act “occurring

 during a [human trafficking] constitutes a separate unit of prosecution, the State

 would then be authorized to divide a single act of confinement into as many counts of

 [human trafficking] as the prosecutor could devise.” See White, 127 N.C. App. at 570,

 492 S.E.2d at 51. Rather, “[c]ommon sense dictates that the offense of [human

 trafficking] should encompass the entire period of a victim’s” being held in

 involuntary or sexual servitude “from the time of the initial act of” recruiting,

 enticing, harboring, transporting, providing, or obtaining begins “until the victim’s

 free will is regained.” See id. at 571, 492 S.E.2d at 51.

¶ 122 As egregious and grotesque as defendant’s actions have been, which the

 majority reiterates and which I do not dispute, the severity thereof does not inform

 the Court as to why defendant was found guilty of 12 counts of human trafficking or

 why defendant could not be charged with a single, continuing offense per victim; it

 certainly does not provide guidance as to the prosecution of future human trafficking

 violations. In fact, the majority’s holding may trigger the exact opposite of its desired

 effect: by allowing the State not to distinguish between each count, the State could

 successfully charge a perpetrator with fewer counts of human trafficking than the

 evidence tends to show.
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

¶ 123 Defendant was charged for 12 counts of human trafficking without the State

 asserting what each count was, and the Record before us was not instructive. Though

 this is an issue of first impression, the pattern established by our Courts’ precedent

 is clear. “Although the facts” in the above-cited cases “are distinguishable from those

 of the present case and the convictions there arose under . . . different statute[s,]” I

 am “compelled to apply the same legal principles” therein. See Conley, 374 N.C. at

 214, 839 S.E.2d at 808. “Because it is clear that N.C. [Gen. Stat.] § 14-[43.11] shares

 a parallel structure with the[se] statute[s] . . . our rationale for applying the rule of

 lenity in th[ose] case[s] applies equally here.” See id. (emphasis added).

¶ 124 Because this is a case of first impression, I believe it is appropriate to review

 how other jurisdictions have treated similar issues. While such cases are not binding,

 and the manner in which our Supreme Court has interpreted the other criminal

 statutes detailed above are of much greater weight in this case, I believe other

 jurisdictions can many times be instructive in how we view similar situations. Our

 research has not revealed many cases on how to interpret human trafficking statutes;

 however, the New Mexico Court of Appeals has addressed the issue of determining

 the unit of prosecution in a substantially similar human trafficking statute.

¶ 125 The New Mexico human trafficking statute in pertinent part provides:

 A. Human trafficking consists of a person knowingly:

 (1) recruiting, soliciting, enticing, transporting or
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

 obtaining by any means another person with the
 intent or knowledge that force, fraud or coercion will
 be used to subject the person to labor, services or
 commercial sexual activity[.]

 ....

 D. Prosecution pursuant to this section shall not prevent
 prosecution pursuant to any other provision of the law
 when the conduct also constitutes a violation of that
 other provision.

 N.M. Stat. § 30-52-1 (2019).

¶ 126 In State v. Carson, the defendant “was convicted of two counts of human

 trafficking involving the same victim . . . between January 24, 2013, and

 February 7, 2013, during their first trip to Albuquerque, and again between

 February 17, 2013, and February 22, 2013, during their second trip to Albuquerque.”

 2020-NMCA-015, ¶ 36, 460 P.3d 54, cert. denied, 2020-NMCERT-____ (No. S-1-SC-

 38128, Feb. 6, 2020). After conducting a “six-factor” inquiry, the Court of Appeals of

 New Mexico concluded the defendant’s acts “were not sufficiently distinct to support

 two separate counts of human trafficking for the same victim . . . .” Id. ¶¶ 34, 42. “If

 there [are] not sufficient indicia of distinctiveness to separate the defendant’s acts,

 we apply the rule of lenity[,] . . . invoking the presumption that the Legislature did

 not intend to create separately punishable offenses.” Id. ¶ 42. (citation and quotation

 marks omitted) (some alterations in original).
 STATE V. APPLEWHITE

 2021-NCCOA-694

 ARROWOOD, J., concurring in part and dissenting in part

¶ 127 Accordingly, having reviewed the Record, North Carolina case law, and having

 surveyed how other jurisdictions treat the unit of prosecution in similar human

 trafficking statutes, I would remand this case for the trial court to vacate the multiple

 charges related to each victim and to leave intact a conviction of one count of human

 trafficking of A.C., H.M., A.B., and M.F., respectively.